# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5524 | **DATE** | 10/30/01 |
| **CASE TITLE** | Rasman vs. Cook County | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment (11-1) is denied in part and granted in part; summary judgment is granted in defendant's favor on Count 3 and the retaliation claim within Count 2, and the motion is otherwise denied. On the Court's motion, the date for filing the pretrial order in conformity with Local Rule 16.1 and Form LR 16.1.1 is reset to 11/21/01 and no extensions will be permitted. The case has been previously set for a pretrial conference on 11/29/01 at 3:30 p.m.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | NOV 5 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 27 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | 01 NOV -2 AM 10:09 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

FRED RASMASON,

    Plaintiff,

v.      No. 00 C 5524

COOK COUNTY as owner and
operator of PROVIDENT
HOSPITAL

    Defendant.

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Fred Rasmason, who suffers from degenerative disc disease, has sued his employer Provident Hospital (which is owned and operated by Cook County) for disability discrimination in violation of the Americans with Disabilities Act. This case is before the Court on Provident's motion for summary judgment. For the reasons outlined below, the motion is granted in part and denied in part.

## FACTUAL BACKGROUND

Rasmason, a registered nurse, was hired by Provident in the position of Clinical Nurse I ("CN I") and began working in the Provident emergency department in November 1993. In April 1994, Rasmason injured his back while steering a hospital bed during his shift. Thereafter, Rasmason continued to experience back pain and numbness, and he underwent spinal surgery in September 1994. As a result of his medical condition, Rasmason did not return to

work at Provident until July 1995, and he received disability payments under the Illinois Workers' Compensation Act for the period of his absence.[1]

Rasmason resumed working at Provident in July 1995 with a lifting restriction of fifty pounds. At that time, Provident created a new position for Rasmason that permitted him to perform quality assurance, statistical collection and teaching duties in a nursing role but did not require him to engage in heavy lifting and bending. In mid-1997, Rasmason reported worsening pain in his back and underwent additional surgery. Rasmason was again absent from work, this time through December 1997. During Rasmason's absence, Provident requested that he obtain an independent medical evaluation concerning his condition. The examining physician, Dr. Kornblatt, concluded that Rasmason likely would be permanently restricted to light duties and recommended a ten-pound lifting restriction. In December 1997, Rasmason returned to the quality assurance position previously created for him and continued to perform quality control duties through July 1998.

In August 1998, Provident experienced a nursing shortage and directed Rasmason to return to the emergency department to perform patient care duties. Provident claims (and Rasmason disputes) that it instructed Rasmason that he was not required to do any lifting in excess of his medical restrictions and that he should request assistance from other nurses when necessary. Rasmason reported to work on August 7, 1998 but called in sick on August 12, 1998. Rasmason remained off work from August 1998 through December 1998, using sick time and vacation leave to compensate him during his absence. While on sick leave, Rasmason regularly

---

[1] Rasmason did not receive these disability payments during the time he was absent from work; rather, the payments were made retroactively following a lawsuit he brought against the hospital.

visited a physician who advised that he avoid repetitive bending and lifting and recommended a twenty-five pound lifting restriction. In January, 1999, Provident informed Rasmason that he was being transferred to the position of a ward clerk, a non-nursing clerical position. The parties dispute whether the ward clerk position, like the CN I position, requires lifting, bending, and twisting. At that time, Rasmason returned to work at Provident as a ward clerk and continues to be employed by Provident in that capacity.

On May 28, 1999, Rasmason filed a charge of discrimination against the hospital, and he received a right to sue letter on June 14, 2001. Rasmason subsequently filed this lawsuit, including three claims: (1) that Provident failed to reasonably accommodate his disability; (2) that Provident discriminated against him in violation of the ADA; and (3) that he was the victim of retaliatory demotion in violation of Illinois law.

## DISCUSSION

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, courts must construe all facts and draw all reasonable and justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

*Failure to Accommodate*

Rasmason argues in Count 1 that Provident failed to accommodate his disability in violation of the ADA. In order to recover under the ADA for an employer's failure to accommodate, Rasmason must show: (1) he was or is disabled within the meaning of the ADA;

(2) Provident knew of the disability; and (3) he was otherwise qualified to perform the essential functions of the job, either with or without reasonable accommodations. *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). Under the ADA, a disability is "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(2). Major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. §1630.2(j). When the major life activity at issue is working, as in this case, "substantially limits" means that the afflicted person is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *EEOC v. Rockwell International Corp.*, 243 F.3d 1012, 1017 (7th Cir. 2001) (quoting 29 C.F.R. § 1630.2(j)(3)(i)).

In its summary judgment motion, Provident conceded that Rasmason was disabled and that it knew of the disability, focusing instead on the question of whether Rasmason could perform the essential functions of the job. For the first time in its reply brief, Provident asserts that Rasmason is not disabled within the meaning of the ADA based on alleged "new" facts revealed in his response to the summary judgment motion. Provident states that it initially relied on testimony and documents evidencing that Rasmason had a ten-pound lifting restriction and other limitations on his ability to move and sit comfortably, and claims that it was "astounded" to learn from Rasmason's response that he has a lifting restriction of twenty-five pounds and has some range of movement in his current ward clerk position. Defendant's Reply, p. 2. This evidence, Provident argues, shows that Rasmason is not disabled after all.

Provident's reply brief was not the appropriate place to make this argument. We

are not convinced that Provident was truly surprised by anything in Rasmason's brief, as Provident's own Statement of Uncontested Facts (at ¶ 25) filed with its summary judgment motion asserts that Rasmason was subject to a twenty-five pound lifting restriction in mid-1998. Moreover, it would be unfair and inappropriate to grant summary judgment on a point Rasmason has had no chance to address.

Provident also argues that Rasmason cannot satisfy the third prong of the failure to accommodate inquiry: that he was qualified to perform the essential functions of the CN I nursing position he seeks. *See Bultemeyer v. Fort Wayne Community Schools*, 100 F.3d 1281, 1284 (7th Cir. 1996). The ADA defines a "qualified individual" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To satisfy the "qualified individual" requirement, Rasmason must show that he has the proper training, skills, and experience for the nursing position he seeks and could perform the essential functions of the job, with or without accommodation. *Bultemeyer*, 100 F.3d at 1284.

The parties do not dispute that Rasmason has the necessary training, skills, and experience of a nurse. Rasmason holds a master's degree in Human Services Administration, a BS in nursing, and maintains proper licensing and certification. The dispute instead revolves around whether Rasmason can perform the "essential functions" of a CN I nurse. Provident argues that the essential functions of a CN I nurse include the ability to: "stand for 8 to 12 hours; sit for 4 to 12 hours; walk for 4 to 12 hours; distance walk; lift 50 to 100 pounds from floor level to bed level frequently; carry objects weighing up to 50 pounds for a distance of up to 10 feet; push or pull objects weighing between 50 to 200 pounds for distances of up to 10 feet; bend;

squat; frequently twist the back and neck; frequently rotate the shoulders; crawl up to 10 feet; and kneel for periods of 1 to 60 minutes as necessary." Defendant's Memorandum in Support of Summary Judgment, p. 2. In contrast, Rasmason argues that the essential functions of a CN I nurse include such things as the ability to "effectively utilize the nursing process as a basis for delivery of patient care;" "perform[] the technical aspects of patient care according to established policies and procedures;" "adapt techniques to the unique needs of individual patients;" "demonstrate leadership skills in the performance of daily activities;" "write accurate, clear concise, and legible patient care reports;" among other things. Plaintiff's Response, p. 16.

We find that a reasonable jury could agree with Rasmason – and apparently so does Provident to some extent – as Rasmason's compilation of the essential functions of the CN I nurse position is cribbed off Provident's own internal summary of the CN I position. *See* Defendant's Motion for Summary Judgment, Exhibit 5. On that same document, the items Provident now claims are "essential functions" of the CN I nursing position are listed under a separate heading entitled "Special Job Characteristics Requiring Accommodations" which, according to the document, are "any features of the working conditions that might require accommodations for an employee." *Id.*, p. 6. Under the ADA, evidence of what constitutes the "essential functions" of a particular job can include, among other things, written job descriptions prepared for advertising for or interviewing job applicants, and the employer's judgment as to what functions are essential. *Winfrey v. City of Chicago*, 259 F.3d 610, 615 (7th Cir. 2001) (citing 29 C.F.R. § 1630.2(n)(3)). As a jury reasonably could find that the special lifting and bending requirements that Provident identifies are not essential functions of the CN I nurse position, summary judgment is inappropriate on this point.

Provident further argues that even if Rasmason could establish that he is a "qualified individual" under the ADA, it still is entitled to summary judgment because it cannot reasonably accommodate Rasmason in a nursing function. The evidence on this point, however, is genuinely disputed. For example, the record reveals that Rasmason was employed in a nursing role for the first four years after his injury. *See* Rasmason Dep. at 62. Further, as discussed by Provident in its briefs, when the hospital experienced a nursing shortage in July 1998, it was prepared to place Rasmason as a nurse in the emergency department with the accommodation that he could request assistance with patient lifting and other tasks that exceeded his medical restrictions.

Provident finally argues that it is entitled to summary judgment because the ward clerk position to which Rasmason was reassigned constitutes a "reasonable accommodation" as a matter of law. As Provident asserts, "it is axiomatic that . . . the employer must provide a reasonable accommodation" to qualified disabled individuals. Defendant's Memorandum in Support of Summary Judgment, p. 9. We do not accept Provident's suggestion, however, that "no reasonable jury could find the offered accommodation to be unreasonable." *Id.* at 10. At the very least an issue of fact exists as to whether Provident's decision to remove Rasmason from nursing functions altogether and place him in a clerical position constitutes a reasonable accommodation. Accordingly, Provident's motion for summary judgment on Rasmason's failure to accommodate claim is denied.[2]

---

[2]That being said, Rasmason also suggests that his failure to accommodate claim is supported by Provident's alleged refusal to offer him a day shift position. This argument is completely without merit. While we do not doubt that Rasmason would prefer the day shift, nothing in the ADA requires Provident to accommodate Rasmason with the schedule he prefers.

### Discriminatory Demotion

In Count 2 of the first amended complaint, Rasmason claims that he was discriminated against and demoted to the position of ward clerk on account of his disability or in retaliation for protected activity under the ADA. On the first part of this claim, to survive summary judgment, Rasmason must provide evidence from which a jury could infer that (1) he is disabled; (2) he was qualified to perform the essential functions of his job; and (3) he suffered an adverse employment action because of his disability. *Moore v. J.B. Hunt Transport, Inc.*, 221 F.3d 944, 950 (7th Cir. 2000). As discussed earlier, Provident did not challenge the first element in its motion, and Rasmason has provided sufficient evidence from which a jury could find in his favor on the second element. Further, Rasmason has offered evidence from which a jury could find that his demotion to the non-nursing ward clerk position constitutes an "adverse employment action" and that his alleged disability precipitated the demotion. Accordingly, Provident's motion for summary judgment as to Count 2 is also denied on this basis. However, Rasmason has failed to provide any evidence supporting a claim of retaliation for making his ADA charge (as opposed to a worker's compensation claim, which is a different matter altogether), and accordingly summary judgment is granted in Provident's favor on the ADA retaliation claim within Count 2.

### Retaliatory Discharge

In Count 3, Rasmason asserts a state law claim of retaliatory discharge. He contends that Provident demoted him to the position of ward clerk because he exercised his rights under the worker's compensation laws. First Amended Complaint, ¶¶ 36-40; Plaintiff's Response to Motion for Summary Judgment, pp. 19-20. The tort of retaliatory discharge under

Illinois law protects workers from the traditional at-will employment rule in limited circumstances by permitting a terminated employee to recover damages for a discharge that violates a clearly mandated public policy. *See, e.g., Zimmerman v. Buchheit of Sparta*, 164 Ill.2d 29, 32, 645 N.E.2d 877, 879 (1994). To prove his claim of retaliatory discharge, Rasmason must show: (1) that he has been discharged; (2) that the discharge was in retaliation for the pursuit of his workers' compensations claims; and (3) that the discharge violates a clear mandate of public policy. *Ludwig v. C&A Wallcoverings, Inc.*, 960 F.2d 40, 42 (7th Cir. 1992) (applying Illinois law) (citations omitted).

Although Rasmason repeatedly refers to his alleged "termination" *see, e.g.*, Plaintiff's Response, p. 19, the record reveals that he was never discharged and that his claim actually is one of retaliatory demotion. Illinois courts have made clear that the law does not recognize claims for retaliatory demotion. *See, e.g., Zimmerman*, 164 Ill.2d at 39, 645 N.E.2d at 882 (finding that Illinois law does not recognize a cause of action for retaliatory demotion or retaliatory discrimination against an employee for asserting workers' compensation rights); *Ludwig*, 960 F.2d at 42-43 (rejecting plaintiff's claim for retaliatory discharge where she was simply demoted rather than severed from her employment). Further, Rasmason's attempt to recast his transfer from the CN I position to ward clerk as a "termination" is without merit. *See, e.g., Welsh v. Commonwealth Edison Company*, 306 Ill. App. 3d 148, 153, 713 N.E.2d 679, 683 (1999) (placement in a new position with different duties does not constitute a termination). Provident is entitled to summary judgment on Count 3.[3]

---

[3] In his response, Rasmason points to other allegedly adverse actions by Provident that involved incorrectly calculating his sick time. However, exhibits attached to the response indicate that any errors in sick day accrual were resolved. *See* Plaintiff's Response, Exhibit 28,

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment (docket item # 11) is denied in part and granted in part; summary judgment is granted in defendant's favor on Count 3 and the retaliation claim within Count 2, and the motion is otherwise denied. On the Court's motion, the date for filing the final pretrial order in conformity with Local Rule 16.1 and Form LR 16.1.1 is reset to November 21, 2001 and no extensions will be permitted. The case has been previously set for a final pretrial conference on November 29, 2001 at 3:30 p.m.

Dated: October 30, 2001

                                                            MATTHEW F. KENNELLY
                                                            United States District Judge